U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 JAN 18 AM 9:28

CLERK
BY ________
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

THOMAS KIBBIE,

Plaintiff,

v.

KILLINGTON/PICO SKI RESORT, LTD, d/b/a Killington/Pico LTD, and MEMIC SERVICES INC.,

Defendants.

Case No. 5:16-cv-247

**OPINION AND ORDER**
**(Doc. 7)**

Plaintiff Thomas Kibbie brings this diversity action against his former employer, Killington/Pico Ski Resort, Ltd ("Killington"), and against Killington's workers' compensation insurance carrier, MEMIC Services Inc. ("MEMIC"), arising out of an injury he sustained in January 2008 while working as an "Ambassador" at Killington. (*See* Doc. 1.)[1] Kibbie alleges that Defendants mishandled his workers' compensation insurance claims related to that injury and improperly denied benefits without justification. (*See* Doc. 1 ¶ 59.) He seeks damages "resulting from the bad faith conduct of Defendants." (*Id.* ¶ 68.)

MEMIC has filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that the court should decline to exercise jurisdiction in light of a parallel state-court proceeding against MEMIC, and further arguing that Kibbie's claims are barred under the

[1] In a separate action in this court, Kibbie has brought a legal malpractice action against Attorney John Mabie and his law firm, alleging that, while representing him on his personal-injury claims, they failed to pursue certain potential claims and benefits. *See Kibbie v. Corum Mabie Cook Prodan Angell & Secrest, PLC*, No. 16-cv-191 (D. Vt. filed July 6, 2016). Litigation in that case is ongoing.

doctrines of economic loss, res judicata, and collateral estoppel. (*See* Doc. 7 at 1–2.) Briefing is complete, and the court took MEMIC's motion under advisement on December 5, 2016.

**Background**

The allegations in Kibbie's Complaint include the following. On January 12, 2008, while working as an "Ambassador" on the trails at Killington, Kibbie sustained injuries in a fall. Kibbie does not recall much of the injury, but he alleges that his head and neck struck the hard snow, his helmet broke, and he broke seven teeth. He also injured his right ankle and right arm. He received medical treatment at hospitals and was diagnosed with a traumatic brain injury (TBI) resulting from the fall. His personality changed after the injury, and he has had constant head and neck pain since that date, constant headaches, difficulty multi-tasking, loss of his sense of taste and smell, and difficulty with balance and with his vision.

On or about September 2, 2010, on the advice of prior counsel, Kibbie entered into a Modified Form 15 settlement agreement with Killington and MEMIC. (Doc. 1 ¶ 45; Doc. 1-1.)[2] Under that agreement, Kibbie accepted a payment of $50,000 in "full and final settlement" of "[a]ll claims occur[r]ing as a result of the work incident including but not limited to right ankle, head/TBI and right elbow/biceps." (Doc. 1-1 at 1.) The agreement further stated, however, that MEMIC "will continue to furnish all related future medical treatment pursuant to the Rules necessary for treatment of his cognitive or other head injury, including neurological, psychological, ophthalmological, TBI care and treatment, and prior care for his covered injuries." (*Id.*)[3]

[2] The Complaint states that the date was March 3, 2011, but the exhibit upon which Kibbie relies indicates that the agreement was approved on September 2, 2010. (Doc. 1-1 at 1, 5.)

[3] In his separate federal suit against Attorney Mabie, Kibbie claims that, as a result of poor drafting with respect to the Form 15 agreement, Kibbie lost the ability to claim a

According to Kibbie, Defendants "failed to live up to their end of the settlement agreement." (Doc. 1 ¶ 47.) He asserts that prescription coverage for medications directly related to the TBI injuries were not covered, that physical therapy (PT) was stopped due to non-payment of services between November and December 2010, and that dental work for teeth which was previously covered was not paid for. (*Id.*; *see also id.* ¶¶ 27, 42, 44.) He also alleges that Defendants denied coverage for a home cervical-traction device (*id.* ¶ 38), and denied treatment for two years for eye care (*id.* ¶ 53).

The following additional facts relate to proceedings before the Vermont Department of Labor (DOL) and in Vermont state court.[4] Kibbie commenced a proceeding with the DOL in 2012 seeking, among other things, medical benefits under 21 V.S.A. § 640. (*See* Doc. 7-1.) On February 23, 2016, DOL Commissioner Anne M. Noonan issued an Opinion and Order addressing the following two issues: (1) "Is ongoing treatment for Claimant's neck pain within the terms of the medical benefits foreclosed by the parties' Modified Form 15 Settlement Agreement?"; and (2) "To what other medical benefits is Claimant entitled?" (*Id.* at 1.)

Analyzing the terms of the Modified Form 15 settlement agreement, the Commissioner concluded that the agreement required Killington to cover treatment for Kibbie's cognitive and head injury, but "does not obligate [Killington] to provide ongoing medical coverage for Claimant's neck injury." (*Id.* at 15, ¶ 17.) The Commissioner accordingly denied Kibbie's claim for medical benefits covering services for treating the neck injury, including PT in November

---

permanency for his head, neck, and psychological injury, and lost the ability to claim Temporary Total Disability and Permanent Total Disability benefits. *See* Complaint, *Kibbie v. Corum Mabie Cook Prodan Angell & Secrest, PLC*, No. 16-cv-191 (D. Vt. July 6, 2016), ECF No. 1.

[4] The court may take judicial notice of the DOL and state-court proceedings. *See Meau v. Sentry Cas. Co.*, No. 5:15-cv-67, 2016 WL 4491626, at *2 n.2 (D. Vt. Aug. 25, 2016) (citing *McGRX, Inc. v. Vermont*, No. 5:10-cv-1, 2011 WL 31022, at *1 n.1 (D. Vt. Jan. 5, 2011)).

and December 2010, and treatment of Kibbie's cervical condition. (*Id.* at 19.) But the Commissioner ordered Killington to pay medical benefits for prescription medications to control symptoms "causally related to Claimant's cognitive or other head injury," including dental treatment necessary to repair accident-related damage to tooth numbers 7, 8, 9, 10, and 30 (the teeth being part of the head), and ongoing treatment for visual deficits (based on a finding that Kibbie's visual deficits are causally related to his head injury). (*Id.* at 20.)

On March 16, 2016, pursuant to 21 V.S.A. § 670, Kibbie appealed the Commissioner's decision to the Vermont Superior Court. (*See* Doc. 7-2.) That appeal—docketed as *Kibbie v. Killington, Ltd*, No. 138-3-16 Rdcv—is currently pending, and a discovery schedule has been set. (*See id.* at 3.) Kibbie filed his Complaint in this court on September 14, 2016. (Doc. 1.)

## Analysis

### I. Rule 12(b)(1) Standard

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it . . . .'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). On a Rule 12(b)(1) motion, the court accepts as true "'all material allegations of the complaint[] and . . . construe[s] the complaint in favor of the complaining party.'" *Id.* (first brackets in original) (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)). "In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint." *Id.*

## II. Primary Jurisdiction

The court begins with the doctrine of primary jurisdiction, which can be a basis for abstention. *See United States v. Phila. Nat'l Bank*, 374 U.S. 321, 353 (1963) (primary jurisdiction "requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme").[5] If the court finds that the doctrine of primary jurisdiction applies, it "either stays the pending action or dismisses it without prejudice." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996). Courts apply the doctrine of primary jurisdiction "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). There is no precise formula for applying the doctrine of primary jurisdiction, but courts typically consider the following four factors:

> (1) whether the question at issue is within the conventional expertise of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
> (2) whether the question at issue is particularly within the agency's discretion;
> (3) whether there exists a substantial danger of inconsistent rulings; and
> (4) whether a prior application to the agency has been made.

*Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006) (quoting *Ellis*, 443 F.3d at 82–83). "The court must also balance the advantages of applying the doctrine against the

---

[5] Rule 12(b)(1) may not strictly apply to motions based on the doctrine of primary jurisdiction, *see Meau v. Sentry Cas. Co.*, No. 5:15-cv-67, 2016 WL 4491626, at *4 & n.5 (D. Vt. Aug. 25, 2016), but courts have reviewed the doctrine in that procedural context. *See Pejepscot Indus. Park, Inc. v. Me. Cent. R.R. Co.*, 215 F.3d 195, 198 (1st Cir. 2000); *Varughese v. Mount Sinai Med. Ctr.*, No. 12 Civ. 8812(CM), 2013 WL 1385015, at *1 (S.D.N.Y. Apr. 3, 2013); *ITT World Commc'ns Inc. v. W. Union Tel. Co.*, 524 F. Supp. 702, 703 (S.D.N.Y. 1981).

potential costs resulting from complications and delay in the administrative proceedings." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995).

In light of the fact that the DOL has completed its work in Kibbie's case, most of the four primary-jurisdiction factors are neutral in this case. But the third factor—the danger of inconsistent rulings—looms large here because of Kibbie's appeal to the Superior Court. Ordinarily, a pending appeal from an agency's decision would not favor operation of the primary-jurisdiction doctrine. *See The Driving Force, Inc. v. Manpower, Inc.*, 538 F. Supp. 57, 60 (E.D. Pa. 1982) ("Once the court has the benefit of the specialized agency's expertise . . . primary jurisdiction should no longer operate to further stay action by the court applying that doctrine in order to defer to a concurrent appeal of the agency's decision."). This case is different.

Under 21 V.S.A. § 670, Kibbie is entitled to a jury trial in his "appeal" to the Superior Court. He has in fact requested a jury trial. (Doc. 7-2 at 1.) In short, Kibbie's "appeal" is functionally a de novo proceeding. *See Brace v. Vergennes Auto, Inc.*, No. 279-12-06 Ancv, 2007 WL 6885865 (Vt. Super. Ct. Sept. 28, 2007) (trial under § 670 was "de novo"); *Ethan Allen, Inc. v. Bressett-Roberge*, No. 50-2-99 Oscv, 2001 WL 36083300 (Vt. Super. Ct. Apr. 24, 2001) (section 670 authorized "de novo" review). According to Kibbie, the issues in the appeal to the Superior Court are: (1) "Is the Form 15 a valid contract?"; (2) Is the neck injury an injury covered under the workers' compensation claim?"; (3) What benefits is the Plaintiff entitled to pursuant to the workers' compensation claim?" and (4) "What amount of attorney fees should be awarded to the Claimant?" (Doc. 8 at 4.) Kibbie maintains that his bad-faith claim is separate and distinct from the questions on appeal to the Superior Court. (*Id.* at 5.)

The court pauses here to examine Kibbie's theory in this court. MEMIC argues that Kibbie has not raised an insurance bad-faith claim, and has instead limited his legal theory to a claim of "negligence." The court rejects MEMIC's assertion. Although the only "count" enumerated in the Complaint is entitled "negligence," the Complaint explicitly alleges that Defendants breached a duty of good faith and fair dealing (Doc. 1 ¶ 61), and seeks damages for "intentional" and "bad faith" conduct related to claims adjustment (*id.* ¶ 68). Kibbie specifically asserts, among other things, that Defendants failed to promptly settle "claims in which liability has become reasonably clear." (*Id.* ¶ 62(d).)

Taking Kibbie's allegations as true, and construing the Complaint in the light most favorable to him, the court concludes that he is claiming insurance bad faith. *See Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014) (federal rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"); *Simonton v. Runyon*, 232 F.3d 33, 36–37 (2d Cir. 2000) ("[G]enerally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim." (quoting *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 712 n.4 (2d Cir. 1980))); *Duff Supply Co. v. Crum & Forster Ins. Co.*, No. CIV. A. 96-8481, 1997 WL 255483, at *7 (E.D. Pa. May 8, 1997) (although perhaps "unartful," pleader need not "identify the precise legal theories upon which he proceeds in the 'headings' of counts"). To prevail on an insurance bad-faith claim, Kibbie must demonstrate that MEMIC "(1) had no reasonable basis to deny benefits of the policy, and (2) knowingly or recklessly disregarded the fact that it had no reasonable basis to deny benefits." *Buote v. Verizon New England*, 190 F. Supp. 2d 693, 701–02 (D. Vt. 2002) (citing *Bushey v. Allstate Ins. Co.*, 164 Vt. 399, 403, 670 A.2d 807, 809 (1995)).

Kibbie cannot prevail on his bad-faith claim unless MEMIC erred in denying coverage. *See Bushey*, 164 Vt. at 402.[6] Here, Kibbie was successful in the DOL proceedings insofar as he obtained a ruling granting coverage for his prescription medication, dental work, and eye care. He has presumably not appealed those favorable determinations. With respect to those benefits, his bad-faith claim is not precluded, nor is there any risk of inconsistent rulings.

On the other hand, if this court does not wait for the Superior Court action to conclude, there is a substantial risk of inconsistent rulings with respect to Kibbie's claims for PT and the cervical traction device. A ruling that MEMIC denied coverage for those benefits in bad faith would be inconsistent with a ruling from the Superior Court that coverage was properly denied. A ruling in MEMIC's favor on the bad-faith claim, if premised on the conclusion that MEMIC properly denied coverage, would be inconsistent with a ruling from the Superior Court that those benefits should have been covered. The risk of inconsistent rulings outweighs the potential costs resulting from complications and delay in the Superior Court action. The court concludes that the doctrine of primary jurisdiction applies.

Here, as in *Meau v. Sentry Casualty Co.*, applying the doctrine of primary jurisdiction will avoid the possibility of inconsistent rulings. No. 5:15-cv-67, 2016 WL 4491626, at *5–6 (D. Vt. Aug. 25, 2016) (finding danger of inconsistent rulings). Kibbie seeks to distinguish *Meau*, arguing that the plaintiff in that case did not raise a bad-faith claim. (Doc. 8 at 8.) The court rejects that argument: the plaintiff raised exactly that claim. *See Meau*, 2016 WL 4491626, at *1 (plaintiff "claims insurance bad faith"). Kibbie correctly notes that, as the court observed in *Meau*, "the mere presence of an administrative workers' compensation proceeding" does not

[6] That is a necessary but not sufficient element for Kibbie's bad-faith claim. He must also show that the denial was unreasonable. *Id.*

"always trigger[] the primary-jurisdiction doctrine." *Id.* at *4. For the reasons discussed above, however, the court concludes that the doctrine does apply in this case.

Kibbie relies on *Buote v. Verizon New England*, 249 F. Supp. 2d 422 (2003), arguing that a federal jury should determine liability and damages for insurance bad faith, and that dismissal would be inappropriate. (*See* Doc. 8 at 8.) It is true that in *Buote*, the court concluded that part of the plaintiff's insurance bad-faith claim survived summary judgment. *See Buote*, 249 F. Supp. 2d at 433 & n.11. Here, the court is not denying Kibbie the opportunity to try his bad-faith claim in federal court. Application of the primary-jurisdiction doctrine results only in a stay of the proceedings or a dismissal without prejudice. *Johnson*, 86 F.3d at 11. In this case, as in *Meau*, the court concludes that a stay is the preferable option. *See Meau*, 2016 WL 4491626, at *6 (stay avoids any potential statute-of-limitations issue). Because it concludes that the doctrine of primary jurisdiction applies in this case, the court does not reach MEMIC's alternative argument seeking abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), or any of MEMIC's arguments for dismissal under Fed. R. Civ. P. 12(b)(6).

**Conclusion**

MEMIC's Motion to Dismiss (Doc. 7) is DENIED. The case is, however, STAYED until the conclusion of Plaintiff's appeal to the Vermont Superior Court in *Kibbie v. Killington, Ltd*, No. 138-3-16 Rdcv.

Dated at Rutland, in the District of Vermont, this 18 day of January, 2017.

Geoffrey W. Crawford, Judge
United States District Court